IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BONNIE YANEZ,<br> Plaintiff, | §<br>§<br>§ | |
| v. | § | No. 3:12-CV-1796-K (BF) |
| | § | |
| CAROLYN W. COLVIN,<br>Commissioner of the Social<br>Security Administration,<br> Defendant. | §<br>§<br>§<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

  This is an appeal from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying the claim of Bonnie Yanez, also known as Bonnie Kay Yanez Gonzalez, ("Plaintiff") for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). The Court considered Plaintiff's Brief, Defendant's Response Brief, and Plaintiff's Reply Brief. The Court reviewed the record in connection with the pleadings. For the reasons that follow, the Court recommends that the final decision of the Commissioner be AFFIRMED.

**Background**[1]

  On September 2, 2009, Plaintiff filed an application for SSI.[2] (Tr. 69-70, 131-37.) In her application, Plaintiff alleged a disability onset date of April 8, 2008, due to obesity and major

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

[2] Plaintiff previously filed an application for SSI on July 14, 2008, which was ultimately denied by the Administrative Law Judge, and said decision was affirmed by this Honorable Court (Civil Action No. 3:10-CV-2003-O (BF)).

depressive disorder. (Tr. 131, 69.) The application was denied initially and again upon reconsideration. (Tr. 71-75, 81-84.)

Plaintiff requested a hearing, which was held on December 8, 2010. (Tr. 34-68.) Plaintiff, represented by counsel, testified at the hearing, along with a vocational expert, Ms. Tammie Donaldson ("VE"). (Tr. 34.) Plaintiff was born on March 31, 1971, and she was thirty-nine years old at the time of the hearing. (Tr. 131.) Plaintiff has a high school equivalency diploma. (Tr. 39.) She has no past relevant work. (Tr. 28.)

On January 18, 2011, the Administrative Law Judge ("ALJ") issued an unfavorable decision. (Tr. 13-33.) In that decision, the ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation process.[3] At step one, the ALJ determined that Plaintiff had not engaged in substantial work activity since her September 2, 2009, application date. (Tr. 18.) At step two, the ALJ found that Plaintiff's obesity, degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, and depressive disorder were severe impairments. (*Id.*) However, at step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the requirements of any listed impairments for presumptive disability under the Social Security Regulations. (Tr. 23.)

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, which includes the ability to lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; stand and walk 2 hours in an 8-hour

---

[3] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. § 416.920.

2

workday; and sit 6 hours in an 8-hour workday. (Tr. 25.) The ALJ found that Plaintiff could never climb ladders, ropes, or scaffolds, but she could occasionally climb ramps and stairs, kneel, stoop, crouch, crawl, and balance. (*Id.*) In addition, the ALJ determined that Plaintiff was limited to understanding, remembering, and carrying out detailed but not complex instructions; making decisions; attending and concentrating for extended periods; accepting instructions and responding appropriately to changes in a routine work setting. (*Id.*) At step four, the ALJ determined that Plaintiff had no past relevant work. (Tr. 28.) Finally, at step five, the ALJ found that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act from September 2, 2009, her application date, through January 18, 2011, the date of the decision.[4] (Tr. 29.)

Plaintiff requested review of the ALJ's decision from the Appeals Council, however, the request for review was denied on March 30, 2012. (Tr. 5-10.) Thus, the ALJ's decision became the final decision of the Commissioner from which Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## **Standard of Review**

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

---

[4] Although Plaintiff alleges a disability onset date of July 14, 2008, SSI benefits are not payable prior to the date the application is filed. *See* 20 C.F.R. § 416.335. Thus, the relevant time frame for Plaintiff's SSI claim begins with the filing date of her application.

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

## Issues

1. Whether the ALJ failed to properly evaluate Plaintiff's severe impairments.

2. Whether the ALJ failed to properly evaluate medical opinion evidence.

3. Whether the ALJ failed to meet his Step 5 burden by establishing work which Plaintiff could perform in light of her RFC.

## Analysis

**Whether the ALJ failed to properly evaluate Plaintiff's severe impairments**

Plaintiff contends that the ALJ applied an improper legal standard to evaluate her severe impairments and that she was prejudiced by this error. (Pl.'s Br. at 3-8.) Plaintiff avers that she was prejudiced because if the ALJ had used the proper standard then he would have found her anxiety disorder to be a severe impairment. (*Id.* at 6-8.) In his decision, the ALJ found that Plaintiff had the following severe impairments: obesity, degenerative disc disease of the lumbar spine, degenerative

joint disease of the right knee, and depressive disorder. (Tr. 18.) The ALJ explained his step 2 analysis:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

(Tr. 17, citations omitted.) Although the ALJ cited the relevant Social Security Regulations and Rulings, he failed to cite to *Stone v. Heckler* in his decision.

In the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Because the ALJ failed to cite to the *Stone* decision or to describe the applicable standard expounded in *Stone,* this Court must assume that the ALJ committed legal error by applying an incorrect standard in his step 2 analysis. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (finding that the ALJ committed legal error by applying the incorrect severity standard when the ALJ failed to cite to the *Stone* decision or the standard set forth in *Stone*). Nonetheless, this assumption may be rebutted by the Commissioner upon a showing that the correct legal standard was actually applied by the ALJ. *See Taylor v. Astrue*, No. 3-10-CV-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *rec. adopted*, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011), *aff'd*, 480 Fed. Appx. 302 (5th Cir. 2012).

The ALJ applied the correct severity standard in analyzing Plaintiff's mental impairments. While Plaintiff argues that the ALJ should have found her anxiety/post-traumatic stress disorder ("PTSD") to be a severe impairment, the medical evidence reflects otherwise.

On December 5, 2009, a psychological consultative examination was performed by Dr. Lawrence Sloan. (Tr. 409-15.) Dr. Sloan noted that Plaintiff was on-time for the appointment, casually dressed, adequately groomed, and she described her chief complaint as "my physical health and my bipolar schizophrenia." (Tr. 409.) Plaintiff described her years of drug abuse, stating that she was addicted to crack cocaine for many years, but that she has not used drugs in five years. (*Id.*) Plaintiff reported that she first sought mental health treatment in 2008 because she was depressed. (Tr. 410.) Plaintiff told the doctor that the medications have been effective, and she doesn't have as many bad days as she used to have, but she still has some days with symptoms of depression. (*Id.*) When she is depressed, she isolates herself from others and becomes very argumentative. (*Id.*) The doctor noted that Plaintiff does not have suicidal ideation, paranoid ideation, or delusional ideation. (*Id.*) Plaintiff reported that she is able to meet all of her daily living activities, as she "can groom herself, dress herself, feed herself, shop for food, prepare food, wash clothes, clean the home, and get about town without getting lost." (Tr. 411.) Plaintiff also takes care of her daughter, goes to church, and is able to take her medications without assistance. (*Id.*) Plaintiff informed the doctor that she has a history of major depressive episodes. (*Id.*) Dr. Sloan diagnosed Plaintiff with major depressive disorder, recurrent, in partial remission; cocaine dependence, sustained full remission; and adult antisocial behavior, by history only. (Tr. 413.) The doctor assigned Plaintiff a GAF score

of 60.[5] (*Id.*) Dr. Sloan also noted that Plaintiff's symptoms presented as recurrent, but were reduced with treatment. (*Id.*)

On December 7, 2009, a psychiatric review technique was performed by Dr. Mark Schade. (Tr. 416-29.) Plaintiff was diagnosed with major depressive disorder, however, she was not diagnosed with any anxiety-related disorders. (Tr. 416, 419, 421.) Plaintiff's degree of limitation regarding her ability to perform daily living activities and maintain social functioning was rated as mild, and her ability to maintain concentration, persistence, or pace was rated as moderate. (Tr. 426.) The doctor noted that Plaintiff had no episodes of decompensation. (*Id.*) Dr. Schade opined that Plaintiff was somewhat limited by her psychiatric symptoms, however, these symptoms did not compromise her ability to function independently, appropriately, and effectively on a sustained basis. (Tr. 428.)

Dr. Laurence Ligon, a state agency medical consultant, reviewed Plaintiff's medical evidence and assessed her mental RFC. (Tr. 430-33.) The assessment found Plaintiff to be not significantly limited in sixteen categories, including the ability to remember locations and work-like procedures; understand, remember and carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a

---

[5] A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM). A GAF score of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See id*.

consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (Tr. 430-31.) Plaintiff was only found to be moderately limited in four categories: ability to understand and remember detailed instructions, ability to carry out detailed instructions, maintain attention and concentration for extended periods, and to respond appropriately to changes in the work setting. (*Id.*)

Dr. Ligon noted Plaintiff's diagnosis as depression, not anxiety, and opined that Plaintiff "can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routing work settings." (Tr. 430, 432.)

Although Plaintiff was diagnosed with PTSD at Dallas Metrocare Services ("Metrocare"), the diagnosis of an impairment does not establish a severe or disabling impairment. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (explaining that the mere presence of some impairment is not disabling per se). Plaintiff was consistently assigned a global assessment of functioning ("GAF") score of 50[6] at Metrocare, however, her functional impairment was additionally assessed as low to moderate on those dates. (Tr. 442, 466, 504.) Furthermore, Metrocare treatment records

---

[6] A GAF score of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. *See* DSM.

9

indicated that Plaintiff was not a risk to herself as she had no suicidal or homicidal thoughts or ideation and she had no psychiatric-related hospitalizations in the last 180 days. (*Id.*) Moreover, those records also demonstrated that Plaintiff was responding fully to her medication. (*Id.*) An impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability. *See Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988). On August 16, 2010, as noted by the ALJ in his decision, Plaintiff reported to Metrocare that she had no need or desire to work. (Tr. 504.)

The evidence documenting an anxiety-related disorder is scarce. Furthermore, Plaintiff's contention that the ALJ failed to consider her anxiety or PTSD fails as well. In his decision, the ALJ acknowledged Plaintiff's diagnosis of PTSD, however, he explained that the treatment notes reflected that she responded well to medication and that her symptoms were only mild. (Tr. 27.) The ALJ made no errors of law by failing to find Plaintiff's anxiety/PTSD disorder a severe impairment because he clearly applied the *Stone* standard, even if he did not specifically mention the standard in his decision. Furthermore, assuming *arguendo* that the ALJ did commit legal error by not citing the *Stone* standard in his decision, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (internal quotation marks omitted). Thus, Plaintiff must additionally show that prejudice resulted from the ALJ's alleged error. Plaintiff argues that committing a *Stone* error in the Northern District of Texas requires the case to be automatically remanded to the Commissioner, however, such argument is misplaced. The Fifth Circuit has recently ruled that a *Stone* error may be harmless and, therefore, not mandate an automatic remand. *See Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012).

Substantial evidence supports the ALJ's finding that Plaintiff's anxiety/PTSD disorder was not a severe impairment. There is no evidence indicating that Plaintiff's anxiety would prevent her from engaging in substantial gainful activity. Instead, the evidence demonstrates that Plaintiff's symptoms would not prevent her from functioning effectively on a sustained basis. Plaintiff has no limitations with regard to her daily living activities, she was found to be not significantly limited in sixteen categories in the mental RFC assessment, and treatment notes indicated that Plaintiff responded well to medication. Hence, even if the ALJ committed a *Stone* error, the Court finds such error to be harmless. Plaintiff cannot demonstrate that the ALJ's finding of her anxiety/PTSD disorder to be a severe impairment might have led to a different outcome and, therefore, she was prejudiced by this error. Accordingly, remand is not required.

**Whether the ALJ failed to properly evaluate medical opinion evidence**

Plaintiff alleges that the ALJ failed to properly evaluate medical evidence when the ALJ discounted the opinion of her treating physician, Dr. Rana. (Pl.'s Br. at 8-10.) The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Newton,* 209 F.3d at 455 (citing *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d

at 456. If good cause is shown, then the ALJ may accord the treating physician's opinion less weight, little weight, or even no weight. *Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1995). If the ALJ does not accord a treating doctor's opinion controlling weight, the ALJ must set forth specific reasons for the weight given, supported by the medical evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). If a contradictory opinion from another expert does not exist, Social Security Regulations require the ALJ to consider specific factors before deciding that a treating physician's opinion will not be given controlling weight.[7] *Newton*, 209 F.3d at 453.

In this case, the ALJ accorded minimal weight to the opinion of Dr. Rana and he set forth specific reasons for doing so in his decision. (Tr. 27-28.) On November 23, 2010, Dr. Rana, who treated Plaintiff for roughly five months, provided an opinion regarding Plaintiff's ability to perform work-related activities, essentially opining that Plaintiff would be unable to complete an eight-hour workday even if performing unskilled sedentary work. (Tr. 482-86.) The ALJ explained that he could not assign significant weight to this opinion because it was inconsistent with the record as a whole. (Tr. 28.) Furthermore, Dr. Rana provided an assessment which was based primarily on Plaintiff's subjective complaints instead of objective findings. (*Id.*) Subjective complaints must be corroborated by objective medical evidence. *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001). The medical evidence in the record supports the ALJ's finding that Plaintiff was capable of performing unskilled sedentary work.

---

[7] These factors include: 1) the physician's length of treatment of the plaintiff, 2) the physician's frequency of examination, 3) the nature and extent of the treatment relationship, 4) the support of the physician's opinion afforded by the medical evidence of record, 5) the consistency of the opinion with the record as a whole, and 6) the specialization of the treating physician. 20 C.F.R. § 404.1527(c)(2).

On November 27, 2009, Dr. David Ukoha performed a physical examination on Plaintiff. (Tr. 404-08.) X-rays revealed *minimal* degenerative joint disease of the right knee and *minimal* degenerative disc disease of the lumbar spine. (Tr. 406-07.) The examination disclosed no sensory or motor deficits and the doctor noted that Plaintiff walked with a very noticeably normal gait. (Tr. 406.) Additionally, a physical RFC assessment was completed by Dr. Ligon on December 10, 2009. (Tr. 434-41.) In this assessment, Dr. Ligon opined that Plaintiff was capable of occasionally lifting or carrying 20 pounds, frequently lifting or carrying 10 pounds, standing or walking at least 2 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday. (Tr. 435.) Dr. Ligon noted that he assessed those limitations due to Plaintiff's morbid obesity and degenerative disc disease of the right knee and lumbar spine. (Tr. 435.)

Dr. Rana's opinion is not only unsupported by the medical evidence in the record, but it is also contradictory to Plaintiff's own statements to Dr. Sloan wherein she indicated that she is able to meet all of her daily living activities in that she can groom herself, dress herself, feed herself, shop for food, prepare food, wash clothes, clean the home, and get about town without getting lost. She also told the doctor that she is able to take care of her daughter, go to church, and take her medications. At the hearing, Plaintiff testified that she is able to walk across the street to the Dollar Store. (Tr. 58.)

Plaintiff's argument that the ALJ was required to analyze the § 404.1527(c)(2) factors is unavailing. The ALJ relied on a contradictory opinion from an examining physician, Dr. Ukoha, in discounting the opinion of Dr. Rana. Thus, the ALJ was not required to perform a detailed analysis of the specific factors. *See Newton*, 209 F.3d at 453. The Court finds that the ALJ provided the requisite good cause for not assigning significant weight to the opinion of Dr. Rana. The ALJ

discredited Dr. Rana's opinion because it was inconsistent with the other evidence in the record and it was conclusory in that it was based on Plaintiff's subjective complaints and not objective medical evidence. More weight will be given to a physician's opinion that presents relevant medical evidence such as signs and laboratory findings in support of such opinion. *Greenspan,* 38 F.3d at 238. Substantial evidence supports the ALJ's decision to not assign substantial weight to the opinion of Dr. Rana.

**Whether the ALJ failed to meet his Step 5 burden by establishing work which Plaintiff could perform in light of her RFC**

Plaintiff contends that the ALJ did not meet his Step 5 burden because he relied on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Guidelines"), in finding that Plaintiff was not disabled. (Pl.'s Br. at 11-14.) Plaintiff argues that the ALJ's reliance on the Guidelines was error because in his RFC formulation he found Plaintiff to have both exertional and non-exertional limitations. (*Id.* at 12.)

At step 5 of the sequential evaluation analysis, the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Guidelines, by expert vocational testimony, or by other similar evidence. *Fraga*, 810 F.2d at 1304. If a claimant's impairments are solely exertional or the non-exertional impairments do not sufficiently affect the individual's RFC, then the Commissioner may rely exclusively on the Guidelines in his Step 5 analysis. *Newton*, 209 F.3d at 458. On the other hand, if the claimant suffers from non-exertional impairments or a combination of exertional and non-exertional impairments,

14

then the Commissioner must rely on a VE's testimony as to whether there are other jobs that exist in the national economy that the claimant can perform. *Id.*

The ALJ assessed Plaintiff's RFC as follows: she has the ability to perform sedentary work, which includes the ability to lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; stand and walk 2 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. However, Plaintiff cannot perform the full range of sedentary work because she has these additional limitations: she can never climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs, kneel, stoop, crouch, crawl, and balance. In addition, the ALJ determined that Plaintiff was limited to understanding, remembering, and carrying out detailed but not complex instructions; making decisions; attending and concentrating for extended periods; accepting instructions and responding appropriately to changes in a routine work setting.[8] In his step 5 analysis, the ALJ recognized that Plaintiff had both exertional and non-exertional limitations, but he found that she was capable of unskilled sedentary work under the Guidelines.

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." SSR 85-15, 1985 WL 56857, at *4 (1985).

---

[8] In her brief, Plaintiff argues that the ALJ's RFC does not take into consideration the moderate limitations he found in Plaintiff's social functioning and her ability to maintain concentration, persistence, or pace. (Pl.'s Br. at 11-12.) This argument is unfounded as the ALJ specifically considered those limitations and incorporated them, as he deemed appropriate, into Plaintiff's RFC. Furthermore, the Court notes that the ALJ's mental RFC is consistent with the mental RFC assessment provided by Dr. Ligon.

Accordingly, "it may be useful to consult a vocational resource." SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996). Here, the ALJ did not find that Plaintiff had a substantial loss of ability to meet any of these basic unskilled work-related activities. Instead, he found Plaintiff capable of all these activities. "Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p, at *7.

Thus, while on the one hand it appears that the ALJ could accurately rely on the Guidelines to find that Plaintiff was capable of performing unskilled sedentary work under the Social Security Rulings, on the other hand, the Fifth Circuit has found that reliance on the Guidelines is inappropriate where the ALJ has found a mental impairment to be severe under step 2. *See Loza,* 219 F.3d at 399 (holding that the finding of a mental impairment to be severe at step 2 precludes the sole use of the Guidelines because such impairment would accordingly significantly affect the individual's RFC); *Hearne v. Barnhart,* 111 Fed. Appx. 256, 257-58 (5th Cir. 2004) (remanding case to the Commissioner because the ALJ erred in solely relying on the Guidelines at step 5 after he found the claimant's depression to be a severe impairment under step 2). Because the ALJ found Plaintiff's depression to be a severe impairment at step 2, this Court finds that the ALJ committed error by utilizing the Guidelines at step 5 to determine that Plaintiff was capable of performing other work in the national economy.

However, the ALJ did not rely *solely* on the Guidelines, as he also elicited testimony from a VE at the hearing. The ALJ posed the following hypothetical, among others, to the VE: assume an individual of Plaintiff's age, education, and work experience who could sit 6 out of 8 hours and stand

16

and walk 2 out of 8 hours, lift up to 10 pounds, and perform work that involves simple tasks, which could be learned within 30 days and would have only one to two steps, and she can get along with co-workers and supervisors. (Tr. 63-64.) The VE replied that this hypothetical person would be capable of performing the full range of unskilled sedentary work. (Tr. 64.) Similarly, the ALJ also found Plaintiff capable of performing the full range of unskilled sedentary work at step 5 of the sequential evaluation process. Although the hypothetical posed to the VE did not include the postural limitations that the ALJ assessed in Plaintiff's RFC, the Rulings explain that restrictions related to climbing ladders, ropes, or scaffolds; balancing; kneeling; crouching; or crawling are not activities usually required in sedentary work and, thus, do not typically erode the occupational base for a full range of unskilled sedentary work. SSR 96-9p, at *7. Otherwise, the ALJ's hypothetical posed to the VE corresponds with the ALJ's RFC formulation.

As the Court has previously explained, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler,* 501 F.3d at 448. Accordingly, Plaintiff would have to show that she was prejudiced by the ALJ's error. However, Plaintiff cannot demonstrate that the ALJ's use of the VE's testimony, in place of the Guidelines, in his step 5 analysis might have led to a different outcome. Instead, it would have led to the same outcome. Accordingly, remand is not required.

## Recommendation

For the foregoing reasons, the Court recommends that the District Court **AFFIRM** the decision of the Commissioner, as it is supported by substantial evidence and the ALJ did not commit prejudicial legal error, and dismiss Plaintiff's Complaint with prejudice.

**SO RECOMMENDED**, August 20, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).